

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-2003

# Newell v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1358

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"Newell v. Comm Social Security" (2003). *2003 Decisions*. Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1358

JANICE NEWELL,

<u>Appellant</u>

v.

COMMISSIONER OF SOCIAL SECURITY

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 01-2850)
District Judge: Honorable Anne E. Thompson

Argued September 9, 2003

BEFORE: BARRY, BECKER, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: October 14, 2003)

Abraham S. Alter (argued)
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065

<u>Attorneys</u> <u>for</u> <u>Appellant</u>

Christopher J. Christie
United States Attorney
Peter G. O'Malley
Assistant United States Attorney

970 Broad Street, Suite 700
Newark, NJ 07102

Barbara L. Spivak
Chief Counsel - Region II
Karen T. Callahan (argued)
Assistant Regional Counsel
Office of the General Counsel
Region II
26 Federal Plaza
New York, NY 10278
Social Security Administration

Attorneys for Appellee

---

OPINION OF THE COURT

---

GREENBERG, Circuit Judge.

This matter comes on before this court on appeal from an order entered on December 3, 2002, affirming the final decision of the Commissioner of Social Security denying appellant Janice Newell's ("Newell") request for widow's disability benefits under Title II of the Social Security Act. The district court had jurisdiction pursuant to 42 U.S.C. § 405(g) and we have jurisdiction over Newell's appeal pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we will reverse the district court's order affirming the Commissioner's decision and instruct the district court to remand the case to the Commissioner for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural History

Newell applied for widow's disability benefits on November 16, 1998. To receive such benefits, Newell needed to demonstrate, <u>inter alia</u>, that she is (1) at least 50 but less than 60 years old; (2) the widow of a wage earner; and (3) under a disability as defined in 42 U.S.C. § 423(d)(2)(A). <u>See</u> 42 U.S.C. § 402(e)(1); 20 C.F.R. § 404.336. Newell, who was 56 years old at the time of her hearing before the ALJ, is the widow of wage earner Robert S. Newell. In her application for widow's disability benefits, she alleged that she had been disabled since July 1, 1997, due to arthritis in her lower back and neck, a deteriorated disc, internal derangement of her knee, sciatica, and diabetes. At oral argument before this court, however, her attorney indicated that her disability is based solely on her liver disease, diabetes, and neuropathy.[1]

The Social Security Administration ("SSA") denied Newell's application for widow's disability benefits on April 20, 1999, and again upon reconsideration on June 17, 1999. Newell appealed and a hearing was held on February 9, 2000, before Administrative Law Judge ("ALJ") Gerald J. Ryan. On April 17, 2000, ALJ Ryan issued a decision denying her application for benefits. His decision became final on April 16, 2001, after the Appeals Council denied Newell's request for administrative review. On

---

[1]The Commissioner has not contended that we should not consider this case on the basis of Newell allegedly being disabled for the reasons she emphasized at oral argument.

June 14, 2001, Newell filed a complaint in the district court challenging the Commissioner's final ruling. The district court affirmed the final decision of the Commissioner on December 3, 2002. Newell thereafter filed this appeal.

B. Factual Background

Newell was born on August 1, 1943, and married Robert S. Newell on August 31, 1968. Their marriage ended in divorce in June 1987, and she has not remarried. Her former husband, a wage earner, died fully insured for Social Security benefits on August 9, 1990, and Newell's eligibility for widow's benefits based on his earnings terminated at the close of the 84th month (seven years) after his death, on August 31, 1997, so that her disability had to have commenced by that date for her to be eligible for benefits. See 42 U.S.C. § 402(e)(1); 20 C.F.R. § 404.336(c)(1).[2]

From 1994 through December 1996, Newell was self-employed doing part-time consulting and craftwork. She estimates that she earned $5000 to $6000 per year during that time. From December 1996 through July 1997, she worked occasionally with a friend who was a carpenter, painting and making stained glass windows. She estimates that she earned $3000 per year during that time. In July 1997, Newell injured her back when she tripped over a lawn mower. After that incident, she stopped working

---

[2]Originally, Newell argued that her eligibility for widow's benefits ran until August 1998, but at oral argument her attorney abandoned that argument and thus accepted August 31, 1997, as the cut-off date.

completely. She also stopped doing yardwork, gardening, washing, and cleaning.

Newell contends that she became disabled on July 1, 1997, but could not afford medical care at that time because she was uninsured. Beginning on June 1, 1998, however, she did seek medical attention when her father gave her the money to pay for it. Accordingly, most of the evidence in her record is comprised of doctors' reports dated post August 31, 1997, the date upon which her eligibility for widow's benefits expired. Newell contends that regardless of the dates on her medical reports, she is entitled to widow's benefits because her medical conditions -- liver disease, diabetes, and neuropathy -- were present prior to August 31, 1997. She argues that these conditions are slowly progressive and that they disabled her within the period of her eligibility for benefits.

1. The Medical Evidence Before ALJ Ryan

The medical evidence consists of reports from Newell's family doctor and her orthopedist, reports from the SSA in the form of a Residual Physical Functional Capacity Assessment and from a consultative examiner, as well as Newell's testimony regarding her pain and functional limitations.

a. Medical Evidence Prior to August 31, 1997

Billing records and an emergency room report indicate that Newell received services for treatment of an unstable low back and contusion of the wrist in 1990. Tr.

191-95, 199, 203.[3]  Other billing statements and physical therapy reports from 1990 indicate that she was fitted for a custom molded lumbosacral corset, was instructed in home exercises and the use of a hot pack, and was treated for an unstable lower back. Tr. 195-98, 202.  Prescriptions dated September 14, 1990, and November 21, 1990, indicate that she was prescribed over-the-counter nonsteroidal anti-inflammatories and Tylenol.  Tr. 194, 196, 200.  In December 1990, she was referred for electromyogram ("EMG") and nerve conduction studies.  Tr. 200-01.  Another billing statement reflects that she received emergency room services on December 10, 1993, for shoulder joint pain.  Tr. 204.

b.  Post-Coverage Medical Evidence (After August 31, 1997)

Most of the medical evidence is comprised of doctors' reports dated post August 31, 1997.  Newell first went to Dr. Harold Chafkin, her family physician, on June 1, 1998. Dr. Chafkin treated her diabetes and the pain in her knees and back.  On August 12, 1998, she began treatment with an orthopedist, Dr. Alfred Greisman.  In his notes, Dr. Greisman mentioned Newell's liver condition, stating that he was "apprehensive about putting her on any nonsteroidals because of her liver condition."  Tr. 152.  His records indicate that Newell lost 50 pounds in 1998.  Tr. 149.  The 50 pounds apparently included 40 pounds of muscle.  Tr. 155.  On September 17, 1998, Dr. Greisman concluded that "due to her condition she is unable to drive or travel."  Tr. 151.  In November 1998, Newell

---

[3]Tr. refers to the administrative transcript.

underwent an EMG, which indicated results consistent with peripheral neuropathy. Tr. 145.

The medical evidence from the SSA includes a Residual Physical Functional Capacity Assessment by a non-treating physician dated December 15, 1998, and a report from consultative examiner Dr. Phillip B. Eatough dated March 11, 1999. Tr. 156-63; 164-67. The Residual Physical Functional Capacity Assessment indicates that Newell occasionally could lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and push and pull without limitation.

Consultative examiner Dr. Eatough noted in his report that Newell had endured gradual and progressive back problems for approximately seven years; neuropathy for approximately two years, possibly related to her diabetes or alcohol excess; and diabetes for about two years. He also noted that when she stopped drinking alcohol, she lost about 45 pounds. Tr. 164-66.

Dr. Eatough's impressions included (1) peripheral neuropathy with bilateral carpal tunnel syndrome and neuropathy of both lower extremities with possible atrophy of the proximal muscle groups; (2) diabetes mellitus most probably secondary to chronic alcohol consumption; (3) peripheral vascular disease; (4) osteoarthritis with low back syndrome, possible sciatica and lumbar neuropathy; and (5) liver dysfunction. He found that she occasionally could lift 20 pounds; frequently lift ten pounds; stand and walk

7

approximately two hours in an eight-hour workday without a required assistive device; and sit about six hours in an eight-hour workday with periodic standing. He found that her ability to push and pull was limited in the upper and lower extremities secondary to tenderness and neuropathy. He reported that she occasionally could climb, balance, stoop, kneel, crouch, and crawl. He found no manipulative, visual, communicative, or environmental limitations. Tr. 166-67.

Less than two months later, on May 1, 1999, Newell's family physician, Dr. Chafkin, reported that Newell "is crippled by severe peripheral neuropathy secondary to diabetes and alcohol consumption." He noted that her prognosis "is poor. . . . She has been seen by the neurologists, by the orthopedists and myself and, unfortunately, we have come up with no answer for this poor woman's pain which will negate her being gainfully employed in any manner whatsoever." Tr. 142.

2. Newell's Testimony Before the ALJ

Newell testified that at the time of her hearing, she was taking prescription pain relievers, sleep aids, and oral medication for diabetes. She was also taking non-prescription pain relievers and vitamins. She wore splints for her wrists and a brace for her back. She testified that her pain was severe and that it had prevented her from working or doing any housework since July 1997, when she fell over a lawnmower and hurt her back. Tr. 31, 43. She did not seek medical attention until June 1998 because she had no insurance. Tr. 32. When she went to the doctor, he diagnosed her with diabetes

8

and neuropathy. Tr. 33-34. She testified that she is unable to bathe, dress herself, and drive. Tr. 43-44.

### 3. The ALJ's Findings

ALJ Ryan found that Newell's allegations were not supported by objective medical evidence and were contradicted by her own statements and actions. He noted, for example, that there was no evidence that Newell sought or received regular medical treatment from 1990 to 1998. Nor did she receive treatment for her back injury in 1997. ALJ Ryan also found that it was not until August 1998, a year after she was last eligible for benefits, that she began to experience neuropathy in her lower extremities and that her medical problems worsened. Thus, he concluded that prior to August 31, 1997, she did not have a severe impairment that lasted or could be expected to last 12 months or more, which significantly limited her ability to engage in work-related activities. Accordingly, he determined that she was not entitled to widow's disability benefits.

## II. DISCUSSION

### A. Standard of Review

We exercise plenary review over the order of the district court, see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000), but review the decision of the Commissioner to determine whether it is supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971). Substantial evidence has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401, 91 S.Ct. at 1427 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)). It is more than a mere scintilla of evidence but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Of course, we exercise plenary review over questions of law. See Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

B. Statutory and Regulatory Framework

In order to establish a disability under the Social Security Act, a claimant must demonstrate that there is some "'medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.'" Stunkard v. Secretary of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988) (quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)); 42 U.S.C. § 423(d)(1)(A). A claimant is considered unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The SSA has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability. See 20 C.F.R. § 404.1520; Williams v. Sullivan, 970 F.2d 1178, 1180 (3d Cir. 1992). The first

10

two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. Id. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. See id. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. See id. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. Id. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Id. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. Id. The claimant bears the burden of demonstrating an inability to return to his past relevant work. Id. If the claimant does not meet the burden the claim is denied.

If the claimant is unable to resume his former occupation, the evaluation moves to the final step. Id. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. Id. The Commissioner must show there are other jobs

11

existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. Id. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. Id. at 118-19.

C. The Step-Two Determination

As mentioned above, at step two of the five-step sequential inquiry the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. See Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 2291 (1987); Social Security Ruling ("SSR") 86-8, 1986 SSR LEXIS 15, at *6-7; SSR 85-28, 1985 SSR LEXIS 19, at *1. The Social Security Regulations and Rulings,[4] as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." Id. (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991)). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,

---

[4]Social Security Rulings constitute the SSA's interpretations of the statute it administers and of its own regulations. Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996). Social Security Rulings do not have the force of law, id.; nevertheless, once published, they are binding on all components of the SSA. Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001).

pushing, pulling, reaching, carrying or handling." Id. (quoting 20 C.F.R. § 140.1521(b)).

The step-two inquiry is a de minimis screening device to dispose of groundless claims. See Smolen v. Chater, 80 F.3d at 1290; McDonald v. Secretary of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19, at *6-7. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. See Bowen v. Yuckert, 482 U.S. at 158, 107 S.Ct. at 2300 (O'Connor, J., concurring). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. See Smolen v. Chater, 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.[5]

1. The ALJ Denied Newell's Claim At Step Two on Erroneous Bases

According to ALJ Ryan, the objective medical evidence in Newell's record did not support her allegation of disability and thus he denied her claim at step two of the

---

[5]SSR 85-28, 1985 SSR LEXIS 19, at *11-12, states that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued."

13

sequential evaluation. It is true that her record lacks evidence of treatment for liver disease, diabetes, or neuropathy prior to August 31, 1997. Nonetheless, this lack of evidence in the particular circumstances of this case did not provide an adequate basis to support a conclusion that Newell was not disabled prior to August 31, 1997. We note that several courts have questioned the relevance of infrequent medical visits in determining when or whether a claimant is disabled. For example, the Court of Appeals for the Ninth Circuit has held that the fact that a "claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day" was not a substantial basis to reject that an impairment existed. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

In fact, SSR 96-7p, 1996 SSR LEXIS 4, at *22, states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Here, Newell's explanation for her failure to seek treatment prior to August 31, 1997, is adequate -- she claims she could not afford treatment until her father gave her money in June 1998. Moreover, the record demonstrates that her income during the germane period was very low and that she did not have medical insurance, circumstances that support her claim that she could not afford treatment. Accordingly, we disagree with the ALJ's

14

statement that "[i]t is reasonable to assume that if [Newell] was experiencing the degree of pain and functional limitation which she has alleged that she would have sought medical treatment." Tr. 16.

It is Newell's position that her liver disease, diabetes, and neuropathy are slowly progressing conditions that existed well before their documentation in 1998. She argues that her medical record must be studied retrospectively to determine when her medical conditions actually became disabling. Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment. See Loza v. Apfel, 219 F.3d 378, 396 (5th Cir. 2000); Likes v. Callahan, 112 F.3d 189, 191 (5th Cir. 1997). Thus, even non-contemporaneous records of Newell's liver disease, diabetes, and neuropathy are relevant to the determination of whether their onset occurred by the date Newell alleges. See Ivy v. Sullivan, 898 F.2d 1045, 1049 (5th Cir. 1990). Here, the ALJ failed properly to consider the non-contemporaneous evidence presented by Newell in order to perform a retrospective analysis.

The ALJ also erred in using Newell's lack of treatment prior to August 31, 1997, as a basis for discrediting her credibility regarding her pain and level of function. Lay evidence need not be corroborated by contemporaneous medical evidence to be credible. See Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984) (lay evidence must be considered even if uncorroborated by medical evidence). Moreover, SSR 96-7p, 1996

15

SSR LEXIS 4, at *1, provides that an "individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The ALJ also failed to give proper reasons for discrediting her credibility. Thus in <u>Sousa v. Callahan</u>, 143 F.3d 1240 (9th Cir. 1998), the Appeals Council had cited the length of time between the actual events and the testimony and the lack of corroborating objective evidence as reasons for rejecting the lay testimony but the court of appeals found that "[t]hese justifications for the rejection of the lay testimony are not sufficient." <u>Id</u>. at 1244.

## 2. The ALJ Failed To Apply SSR 83-20

SSR 83-20, 1983 SSR LEXIS 25, provides ALJs with an analytical framework for determining a disability onset date. SSR 83-20 defines the "onset date of disability" as "the first day an individual is disabled as defined in the Act and the regulations." <u>Id.</u> at *1. In cases in which the onset date is critical to a determination of entitlement to benefits, an ALJ must grapple with and adjudicate the question of onset, however difficult. <u>See</u> <u>id.</u> ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may . . . even be determinative of whether the individual is entitled to or

16

eligible for any benefits.").[6]

Here, the ALJ's task was to determine when, if ever, Newell's liver disease, diabetes, and neuropathy became disabling. According to SSR 83-20, id. at *6-7,

> [w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> . . .
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination . . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.
>
> . . .
>
> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

Newell is correct that the ALJ in this case failed to follow this formula. The ALJ

---

[6]Under SSR 83-20, 1983 SSR LEXIS 25, at *3, an ALJ should consider three factors in determining an onset date: (1) the claimant's allegations; (2) the claimant's work history; and (3) medical and other evidence.

should have consulted a medical advisor to help him infer the onset date as required by SSR 83-20 and our decision in <u>Walton v. Halter</u>, 243 F.3d 703 (3d Cir. 2001).[7] <u>See</u> <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor. . . ."); <u>Spellman v. Shalala</u>, 1 F.3d 357, 363 (5th Cir. 1993) ("[B]ecause Spellman's mental impairment was of a slowly progressive nature, and the medical evidence was ambiguous with regard to the disability onset date, the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor."); <u>Bailey v. Chater</u>, 68 F.3d 75, 79 (4th Cir. 1995) ("[T]he date on which the synergy [of the claimant's numerous ailments] reached disabling severity remains an enigma. In the absence of clear evidence documenting the progression of Bailey's condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").

## III. CONCLUSION

A district court, after reviewing the decision of the Commissioner may under 42

---

[7]In <u>Walton</u>, we held that the ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available. <u>See</u> <u>id.</u> at 709.

U.S.C. § 405(g) affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for a rehearing. See Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984). A court of appeals also retains this discretion and, in reversing or modifying the Commissioner's decision, may choose to direct a remand of the case to the Commissioner for a further hearing or simply direct the district court to order the award of benefits. Id. But a court of appeals should make the decision to direct the district court to order the award of benefits only when the administrative record of the case has been developed fully and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Id. at 221-22. As Newell notes, this case has not been developed fully as the ALJ denied her claim at step two of the sequential evaluation on erroneous bases. He failed properly to review the evidence in the record dated post August 31, 1997, and he improperly used Newell's lack of treatment during her coverage period as a basis for discrediting her credibility. Finally, the ALJ failed to comply with SSR 83-20, and he failed to consult with a medical advisor to determine the onset date of Newell's alleged disability. It is therefore necessary to reverse the district court's order affirming the Commissioner's denial of benefits.

For the foregoing reasons we will reverse the order of December 3, 2002, and will remand the case to the district court to remand it in turn to the Commissioner for further proceedings in accordance with this opinion.

_____

19

_/s/ Morton I. Greenberg_

Circuit Judge