

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2005

# Jakubowski v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3264

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jakubowski v. Comm Social Security" (2005). *2005 Decisions*. Paper 1373.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1373

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3264
_____

MARCIA JAKUBOWSKI,

Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-05952)
District Judge:  Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
April 1, 2005

Before:  ALITO, SMITH and FISHER, *Circuit Judges*.

(Filed:  April 12, 2005)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant Marcia Jakubowski appeals from a final order of the United States

District Court for the District of New Jersey affirming an order of the Commissioner of

Social Security denying her claims for disability insurance benefits under Title II of the

Social Security Act. Because we believe that the District Court erred in finding that Appellant had failed to demonstrate that her seizure disorder was a "severe impairment" at step two of the five-step sequential analysis, we will reverse the order of the District Court.

As we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to this appeal. Appellant was awarded disability insurance benefits effective September 1994 due to a seizure disorder. Following a disability hearing in July 2000, the hearing officer found that her seizure "disability" had ceased as of July 1999, and ordered her benefits terminated effective September 1999. At the time, the only reports from physicians who had treated Appellant indicated that Appellant's seizures could be "well controlled with medication" and that Appellant herself had stated that she "had been free from seizures for a one-year period with the medication[.]"

On September 13, 2000, following the hearing officer's decision terminating benefits, Appellant filed a Request for Hearing, and a hearing was scheduled for March 26, 2001. Ultimately, an administrative law judge denied Appellant's claim on June 28, 2002. In the course of rejecting Appellant's claim, the ALJ minimized the force of the report of Appellant's most recent treating physician, Dr. Melissa Ann Carran. After treating Appellant in the Spring of 2002, Dr. Carran had opined in a May 13, 2002 report that Appellant was unable to work and that the medication she had been prescribed to address her seizures, Dilantin, was a "failed medication." The ALJ found that Dr.

2

Carran's opinion lacked any "medical basis" and generally disregarded it. The ALJ concluded that Appellant had failed to demonstrate that her seizures constituted a "severe impairment" as required under the five-step sequential evaluation framework, and therefore denied her claim. The District Court affirmed the ALJ's decision.

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. In determining whether an applicant is disabled within the meaning of the Act, and therefore eligible for benefits, the Commissioner applies the familiar five-step sequential evaluation process. The Commissioner inquires, in turn, whether an applicant: (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

The Commissioner may deny an applicant's claim for failure to establish the existence of a "severe impairment" at step two of the sequential framework. But step two should rarely be the stage at which an applicant's claim is rejected. "The step-two inquiry is a de minimis screening device to dispose of groundless claims[,]" *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted), and "because step two is to be rarely utilized as basis for the denial of benefits, its

invocation is certain to raise a judicial eyebrow." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Newell*, 347 F.3d at 546 (quoting Social Security Ruling 85-28, 1985 SSR LEXIS 19, at *6-7). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two." *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* (citation omitted). "Reasonable doubts on severity are to be resolved in favor of the claimant." *Id.* at 547.

Notwithstanding the de minimis burden imposed at step two, the ALJ denied Appellant's claim at step two in the face of evidence demonstrating that Appellant's seizure disorder was more than a "slight abnormality," and had more than a "minimal effect on [Appellant's] ability to work." As noted, Appellant consulted Dr. Carran in the Spring of 2002. Dr. Carran ordered a brain MRI and electroencephalogram ("EEG") monitoring of Appellant, and reviewed video of Appellant suffering seizures at night. Following her examination of Appellant, Dr. Carran issued a medical report stating that Appellant was epileptic and suffered one to four complex partial seizures per day and

4

secondary generalized seizures at night. She opined that Appellant was impaired cognitively and mentally by frequent, daily generalized and partial seizures, and that Appellant's memory was poor. She concluded that Appellant was limited to lifting/carrying 1-2 pounds, that standing/walking was uncertain, and that Appellant was "completely disabled" and unable to work.

The ALJ found that Dr. Carran's conclusions lacked a "medical basis." We disagree. Dr. Carran's assessment was based on the MRI and EEG testing, video evidence, and her own medical examination, all of which revealed Appellant's ongoing seizure disorder. Dr. Carran detailed her findings in the medical report contained in the record before the ALJ. We find the evidence of "severe impairment" set forth in Dr. Carran's report sufficient to satisfy step two, and conclude that the ALJ erred in concluding otherwise.

The Commissioner stresses on appeal that the issue here is not whether Appellant "has a seizure disorder, but rather whether her seizure disorder could be controlled by Dilantin or other medication... ." The Commissioner contends that Appellant's seizures were remediable with medication and therefore could not be step-two "severe impairments" because impairments which are remediable cannot constitute the basis for disability under the regulations. There is evidence in the record that in 1999-2000, Dilantin did control Appellant's seizures. But Dr. Carran opined in 2002 that Dilantin was a "failed medication," and switched Appellant to different medications. And

5

Appellant testified at the 2002 hearing before the ALJ that she continued suffering seizures despite the Dilantin. Thus, the only then-fresh evidence concerning the effectiveness of Dilantin supports Appellant's position that her seizures were not remediable by Dilantin.

Based on the evidence in the record, particularly the evidence from Dr. Carran's 2002 treatment of Appellant, we find that the District Court erred in denying Appellant's claim at step two of the sequential evaluation. We will therefore reverse the order of the District Court and remand with instructions to remand the matter to the Commissioner for further proceedings consistent with this opinion.