

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2008

# Klangwald v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1137

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Klangwald v. Comm Social Security" (2008). *2008 Decisions.* Paper 1436.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1436

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1137
_____

MADELINE A. KLANGWALD,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY,


_____

On Appeal from United States District Court
for the District of New Jersey
(D. C. No. 05-cv-02932)
District Court Judge: Honorable Mary L. Cooper
_____

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2008

Before: BARRY, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: March 17, 2008)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Madeline Klangwald appeals the order of the District Court affirming the Commissioner's determination that she was disabled as of February 28, 2002. We will affirm.

## I.

Because we write exclusively for the parties, who are familiar with the facts and proceedings below, we will not revisit them here. The Administrative Law Judge (ALJ) found at step two of the five-step sequential evaluation that Klangwald's cardiac impairment was not "severe." An impairment is not severe if it "does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," and include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b)(1).

Here, the ALJ found that Klangwald's cardiac impairment — superventricular tachycardia (SVT) — was not severe because she had received no medical treatment for SVT for several years. This conclusion was supported by substantial record evidence. *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004).

First, we note that there is no evidence in the record that Klangwald was treated for SVT after 1994. Although Klangwald testified that she has daily heart palpitations and has taken heart medications since 1998, the Commissioner rightly points out that

2

there is no *medical* evidence of either symptoms or treatment until Dr. Keenan's 2002 examination. Absent a "medically determinable physical or mental impairment," an individual must be found not disabled at step two and "[n]o symptom or combination of symptoms can be the basis for a finding of disability . . . unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

We also note that none of Klangwald's recent medical examinations documented any cardiac-related symptoms. Dr. Keenan's 2002 report notes that Klangwald takes heart medication, but makes no mention of any cardiac-related symptoms. And Dr. Jain's 2002 report states that Klangwald expressly denied any chest pain, palpitations, dizziness, or shortness of breath. On this record, we cannot conclude that the ALJ erred in holding that Klangwald's SVT was not "significantly limiting."

## II.

Klangwald next alleges that the ALJ erred when he concluded at step three that her impairments did not meet any of the Listings. The ALJ found that "no treating or examining physician had mentioned findings equivalent in severity to the criteria of any listed impairment." There is little or no medical evidence to suggest that she experienced uncontrolled or repeated episodes of syncope, as required by Listing 4.05 (cardiac). In fact, in her opening brief Klangwald concedes that she experienced no syncope during the

relevant period. Likewise, there is no credible evidence[1] that Klangwald's knee

impairment required the use of a hand-held assistive device. *See* Listings 1.00B2b &

1.02A (impairment must result in an "inability to ambulate effectively" demonstrated by

the need for a hand-held assistive device). Indeed, in February 2002 Klangwald reported

to Dr. Keenan that she could walk without an assistive device.

We are also unpersuaded by Klangwald's assertion that the ALJ failed to consider

whether her obesity, together with her knee and cardiac impairments, met a Listing. To

the contrary, the ALJ provided a reasonably thorough review and discussion of

Klangwald's medical history, observing that she had experienced heart and knee

problems in the past, but that her SVT was only an occasional illness induced by stress

and her knee problems permitted her to perform sedentary work that did not involve

heavy lifting. These reports were consistent with the ALJ's conclusion that no physician

had identified impairments severe enough to meet a listed requirement. Furthermore,

none of these reports suggested that Klangwald's obesity aggravated her other

impairments before the February 2002 onset date of her disability.

We also conclude that the ALJ's step three analysis was sufficient to permit

judicial review. After broadly concluding that Klangwald "has no impairment, which

---

[1] Although Klangwald testified that she occasionally uses crutches or a cane, the ALJ found that her testimony with respect to the degree of her impairments was not credible, and we find that this determination was supported by substantial record evidence. *See* Part III, *infra*.

4

meets the criteria of any of the listed impairments," the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (finding step three analysis adequate where ALJ reviewed medical evidence and concluded, "after carefully compar[ing] the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments, the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings.") (internal quotation marks omitted).

III.

Finally, the ALJ did not err in concluding that Klangwald could perform a full range of sedentary work prior to February 28, 2002. Sedentary work requires lifting or carrying ten pounds occasionally, sitting for up to six hours at a time, and standing and walking for up to two hours total of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a). Here, the ALJ relied heavily upon the vocational expert's opinion that, assuming a residual functional capacity (RFC) for less than a full range of light work between May 1995 and October 1998, and for sedentary work from October 1998 to February 2002, there were a number of sedentary positions that Klangwald could have performed before February 2002. The ALJ also found Klangwald's testimony regarding her impairments between 1995 and 2002 not credible in light of the degree of medical treatment received during this period.

5

Once again, we find the ALJ's analysis supported by substantial evidence. In 1998, Klangwald's own physician, Dr. Capecci, found that she could lift or carry 11-20 pounds and cleared her for "sitting work."[2] Likewise, in 2002 Dr. Jain found that Klangwald could function without any problems and there was no evidence of any "acute problems." Even Dr. Keenan's report, upon which the ALJ relied in finding Klangwald disabled from February 2002 forward, stated that she could perform part-time sedentary work. Thus, the medical evidence prior to 2002 fully supports the ALJ's analysis with respect to Klangwald's RFC. Moreover, none of the medical reports in the record suggests that Klangwald received the level of medical treatment consistent with the severity of her claimed symptoms and the type of medical treatment received (or not received) is highly relevant in evaluating Klangwald's credibility. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Klangwald's argument that the ALJ overlooked her non-exertional limitations — namely, her cardiac and back impairments — is unavailing. As we have already explained, the ALJ properly found that her SVT was not severe at step two, and Klangwald does not challenge the ALJ's determination with respect to her back

---

[2] Klangwald argues that the ALJ overlooked Dr. Capecci's opinion that she could not stand for more than one hour per day or sit for more than four hours, and that this should have indicated that she could not do sedentary work and was disabled as of at least 1998. To the contrary, the ALJ's hypothetical, which asked the VE to assume that Klangwald could perform only light work through October 1998, plainly took Dr. Capecci's RFC into account.

condition.  Similarly unavailing is her argument that the ALJ erred by not calling a medical expert to determine the onset date of her disability.  Klangwald relies principally on SSR 83-20, which provides that an ALJ "should call on the services of a medical advisor when onset must be inferred."  Yet we have generally applied SSR 83-20 only where medical evidence from the relevant period is unavailable.  *See, e.g., Newell v. Comm'r Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003); *Walton v. Halter,* 243 F.3d 703 (3d Cir. 2001).  Here, the ALJ had access to medical records as far back as 1993, and the record adequately supports the ALJ's conclusion that Klangwald was not disabled until February 28, 2002.  Indeed, some of the medical evidence before the ALJ, namely Dr. Jain's February 2002 report, could have supported the conclusion that Klangwald was not even disabled as of that date.

For all the foregoing reasons, we will affirm the judgment of the District Court.