

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2006

# Izzo v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3420

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Izzo v. Comm Social Security" (2006). *2006 Decisions.* Paper 833.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/833

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3420
_____

TINA IZZO,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 02-cv-1536)
District Judge: Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
April 21, 2006

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>,
and DuBOIS,* <u>District Judge</u>

(Filed:  June 27, 2006)
_____

OPINION
_____

DuBOIS, <u>District Judge</u>
        Appellant Tina M. Izzo ("Izzo") appeals from an order of the District Court for the

_____

        * Honorable Jan E. DuBois, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

District of New Jersey affirming the final decision of the Commissioner of Social Security ("Commissioner") which denied Social Security benefits. In a detailed analysis of the administrative proceedings, the District Court determined that the Commissioner's decision was supported by substantial evidence in the administrative record. We affirm.

## I. Factual Background and Procedural History

Izzo was diagnosed with Lyme disease in April 1995. After an unsuccessful course of treatment with the antibiotic doxycycline, Izzo was prescribed intravenous treatment on January 16, 1996 by Dr. Philip Cohen, who opined that Izzo's prognosis was "good." (Tr. 218) On July 11, 1996, Dr. Cohen reported that Izzo's response to the intravenous treatment was only partial and that her course of treatment had been changed to photophoresis. (Tr. 216) Additionally, on May 20, 1996, Dr. Shahin Buchan diagnosed Izzo with an adjustment disorder and depressed mood. (Tr. 135) In 1997 and 1998, Izzo received treatment at Ocean Mental Health Services for her depression. Dr. Victor Garde performed a mental health examination of Izzo on September 24, 1997, and concluded that Izzo was "mild to moderately depressed" and that she had "trouble with concentration." (Tr. 222) Dr. Garde prescribed psychotherapy and Prozac. On February 11, 1998, Izzo was discharged from Ocean Mental Health Services due to "erratic" treatment attendance. (Tr. 224)

On February 2, 1996, Izzo applied for disability benefits under Titles II and XVI of the Social Security Act, asserting disability due to Lyme disease, candidiasis, and chronic fatigue syndrome. Documentation from the Social Security Administration lists a

primary diagnosis of Lyme disease and secondary diagnoses of adjustment disorder and depressed mood. The record also contains evidence of asthma, an alleged impairment not specifically mentioned in the application for benefits.

Izzo's application for benefits was both denied initially and upon reconsideration. On October 23, 1996, Izzo requested a hearing before an Administrative Law Judge. Following a hearing on March 16, 1998, Administrative Law Judge Dennis O'Leary determined that Izzo was able to perform a full range of sedentary work and was therefore not disabled. (Tr. 233) In an order issued on February 23, 2000, the Appeals Council vacated the decision because medical evidence in the record "shows that [Izzo] may have a mental impairment" and remanded the matter to Administrative Law Judge Daniel N. Shellhamer (the "ALJ") for further proceedings. (Tr. 239)

All of the evidence presented at the first hearing was incorporated into the record before the ALJ, and, prior to Izzo's second hearing, the ALJ ordered additional physical and psychiatric consultations. On August 10, 2000, Dr. Ronald Bagner performed both a consultative physical examination and an assessment of Izzo's ability to do work-related activities. Although Dr. Bagner noted a history of Lyme disease, he concluded that Izzo retained a "normal range of movement" in her upper and lower extremities. (Tr. 264) Additionally, Dr. Bagner opined that Izzo's abilities to lift/carry, stand/walk, and sit were not affected by her impairments. (Tr. 266). Dr. Bagner also concluded that Izzo's abilities to reach, handle, push, and pull were not affected by her impairments. (Tr. 267)

On September 22, 2000, Dr. Alexander Iofin performed a consultative psychiatric

3

examination of Izzo, describing Izzo's insight and judgment as "satisfactory" and diagnosing Izzo with dysthymia. (Tr. 271) Dr. Iofin opined that Izzo "did not appear to have a major psychiatric pathology which [was] deteriorating her level of function." (Tr. 271). Dr. Iofin also completed a statement of Izzo's ability to do work-related activities and concluded, among other things, that, most of the time, Izzo satisfactorily understood and remembered short, simple instructions, could carry out short, simple instructions, and could make simple work-related decisions. (Tr. 273) In the same report, Dr. Iofin opined that Izzo could sustain an ordinary routine without special supervision, maintain attention and concentration for extended periods, perform activities within a schedule, and complete a normal work week some of the time. (Tr. 274) Although Dr. Iofin's report was not transcribed until September 29, 2000, three days after the September 26, 2000 hearing, the ALJ analyzed the report in his findings dated February 7, 2001.

At a hearing on September 26, 2000, the ALJ heard testimony from Izzo, Izzo's husband, William England, and a vocational expert. Izzo testified that, due to Lyme disease, she suffered from fatigue, headaches, and significant joint pain. In response to a question from the ALJ about her ability to walk up and down stairs, Izzo stated that she had significant difficulty climbing steps and that, as a result, the bedroom in her home was moved to the first floor. She added that she could walk on flat ground and that she could sit down "but I am always in pain while I'm doing those things." (Tr. 296) Regarding her depression, Izzo testified that she had trouble concentrating and did not go out socially. She also testified that she rarely drove a car "because I have bad

4

concentration and I get lost very easily." (Tr. 289) With respect to her asthma, Izzo testified that it was controlled by the use of inhalers. (Tr. 300) She also testified that her asthma was worse when she was young and that she had gone to the hospital emergency room only once in response to an attack. (Tr. 301) Mr. England testified that Izzo suffered from fatigue and was emotionally unstable.

In response to hypothetical questions posed by the ALJ, the vocational expert testified that a person limited to light work, with additional non-exertional limitations of only being able to perform jobs that require simple one or two step instructions within well-set defined routines, could not perform Izzo's past relevant work,[1] but that there were other jobs in the national economy that such a person could perform, including the jobs of hostess, housekeeper, and laundry worker. (Tr. 317)

Based on the record presented, the ALJ made the following findings, *inter alia*: (1) Izzo had not engaged in substantial gainful activity since the alleged onset of disability; (2) Izzo suffered from Lyme disease, candidiasis, and depression, impairments considered "severe" based on the requirements in the Regulations at 20 C.F.R. §§ 404.1520(b) and 416.920(b); (3) Izzo's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Izzo's allegations regarding her limitations were not totally credible; (5) Izzo was unable to perform any of her past relevant work; (6) Izzo had the residual functional capacity to

---

[1] Izzo previously worked as a painter, deli clerk, and bartender/waitress.

perform a wide range of light work, but could perform only simple one or two step instructions within well-set defined routines which did not require constant fine manipulations; and (7) there were a significant number of jobs in the national economy that Izzo could perform. (Tr. 21)

As a result of these findings, the ALJ determined that Izzo was not disabled. The Appeals Council affirmed the ALJ's decision on February 8, 2002, and Izzo then sought judicial review in federal court. On May 5, 2005, the District Court affirmed the Commissioner's decision.

## II. Jurisdiction and Standard of Review

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's decision affirming the Commissioner's denial of benefits. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). In that review, we are limited to a determination of whether the Commissioner's determination is supported by substantial evidence. 42 U.S.C. § 405(g); *Newell v. Commissioner of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (citations omitted).

Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance," and is evidence which "a reasonable mind might accept as adequate to support a conclusion." *Newell*, 347 F.3d at 545. Where evidence in the record is susceptible to more than one rational interpretation, we must accept the Commissioner's conclusions. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted).

6

## III. Discussion

### A.

To establish a claim for disability, an individual must show an "inability to engage in any substantial gainful activity by reason of any medically determinable . . . impairment which has lasted or . . . can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). When evaluating a claim, the Commissioner undertakes a five step analysis, considering whether: (1) the claimant worked during the alleged period of disability; (2) the claimant has a severe, medically determinable impairment; (3) the impairment meets the requirements of a listed impairment; (4) the claimant can continue to perform past relevant work; and (5) the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520; *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). The claimant bears the burden of proving steps one through four. If the claimant satisfies her burden, the burden shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Sykes*, 229 F.3d at 265.

In this case, the ALJ denied benefits at step five. After determining that Izzo's impairments did not meet the requirements of a listed impairment, the ALJ concluded that Izzo could not perform any of her past relevant work. Based on testimony from the vocational expert, however, the ALJ determined that Izzo was capable of performing other work in the national economy, including the jobs of hostess, housekeeper, and laundry worker.

7

**B.**

Izzo asserts that the ALJ failed to recognize Izzo's asthma as a severe impairment and did not fully consider evidence of Izzo's mental and cognitive limitations submitted after the hearing. We disagree.

An impairment is "not severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The record presented does not support a finding that Izzo's asthma presented a severe impairment. Izzo testified that her asthma was controlled by the use of inhalers, and that her condition was worse when she was younger. In addition, there are no medical signs or findings of asthma in the record and no treating physician diagnosed Izzo with this condition. Moreover, the burden is on the claimant to demonstrate that an impairment is severe, and Izzo has failed to provide any evidence that would support a finding that her asthma is a severe impairment. Thus, the ALJ's conclusion on this point is supported by substantial evidence.

Second, the only medical evidence of Izzo's mental and cognitive limitations submitted after the hearing was the evaluation by Dr. Iofin. Because the ALJ's findings included a detailed analysis of Dr. Iofin's report, we conclude that adequate consideration was given to the severity of each of Izzo's asserted mental and cognitive impairments, notwithstanding the fact that the report was not provided to the ALJ until after the September 26, 2000 hearing.

**C.**

8

Izzo next complains that the ALJ did not properly consider whether her multiple impairments met or equaled the severity of one of the listings and that the ALJ's conclusion is not supported by substantial evidence. On this point, Izzo contends that evidence of her severe pain, fatigue, postural limitations, and mental limitations, when combined with her severe impairments, meet or equal a listing. Izzo also argues that the ALJ's failure to explain his reasoning for the medical equivalence and combined impairment determination is reversible error. We disagree.

In *Jones v. Barnhart*, we decided that a reviewing court must look at the ALJ's decision, as a whole, to determine whether the ALJ "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." 364 F.3d 501, 505 (3d Cir. 2004). Our review of the ALJ's decision, in its entirety, leads us to conclude that he considered all of the relevant evidence in deciding whether Izzo's impairments met or equaled the severity of one of the listings. The ALJ incorporated all of the evidence submitted from the first hearing, analyzed the report from Dr. Bagner on Izzo's physical limitations and the report from Dr. Iofin on Izzo's mental impairments, and considered the testimony from Izzo and her husband on the effect of the totality of impairments on Izzo's daily life.

We also conclude that the ALJ's finding that Izzo's asserted impairments did not meet or medically equal one of the listed impairments is supported by substantial evidence. The consultative examiner, Dr. Bagner, reported that Izzo's ability to lift and carry, stand and walk, and sit were not affected by her asserted impairments. Regarding

9

Izzo's mental limitations, Dr. Iofin explained that Izzo did not suffer from a major psychiatric pathology. These reports support the ALJ's conclusion that Izzo's complaints of pain, postural, and mental limitations, did not, when combined with Izzo's severe impairments, meet or equal a listing.

Finally, on this issue, Izzo argues that the ALJ's failure to complete a Psychiatric Review Technique Form ("PRTF"), as required by the Appeals Council on remand, constitutes reversible error. We do not agree. Between the date of remand and the date of the ALJ's decision, the applicable regulations were changed. The PRTF is no longer required by the regulation cited by the Appeals Council in its remand decision. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2); 65 Fed. Reg. 50,774 *et. seq.* (August 21, 2000). Therefore, we conclude that the ALJ's failure to complete a PRTF was not an error.

**D.**

Izzo contends that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. Specifically, she argues that the ALJ failed to properly consider her combined exertional impairments and non-exertional limitations, and that the ALJ committed an error of law in discounting Izzo's statements of subjective symptoms of pain and fatigue that were supported by medically determinable impairments. In addition, Izzo asserts that the RFC determination was made in error because it was inconsistent with the finding made after the first hearing that Izzo was limited to a sedentary exertional RFC. Once again, we disagree.

The RFC determination is supported by substantial evidence. The District Court

10

concluded, and we agree, that a review of the record fails to disclose any evidence from any treating physician that contradicts the determination by the ALJ that Izzo could perform a wide range of light work. In addition, the ALJ relied heavily upon the report submitted by Dr. Bagner, who concluded that Izzo's abilities to lift/carry, stand/walk, and to sit were not affected by her impairments. With respect to non-exertional impairments, the ALJ thoroughly analyzed Dr. Iofin's report and evaluated Izzo's subjective complaints of pain and fatigue. Dr. Iofin concluded that Izzo did not suffer from any major psychiatric pathology and that Izzo retained the ability to understand, remember, and perform short, simple instructions most of the time.

Regarding Izzo's subjective complaints, a reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Moreover, the ALJ is required to give significant weight to a claimant's subjective complaints and alleged functional limitations when those allegations are supported by competent medical evidence. *Schaudeck v. Commissioner of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). In this case, the ALJ concluded that Izzo's allegations regarding her limitations were not totally credible in light of the reports of the treating and examining doctors.

The medical evidence supports the ALJ's finding that Izzo's condition was not as disabling as she claimed. First, Izzo had not received any treatment for physical or mental impairments since 1998, two years prior to the hearing. Second, Dr. Cohen

11

opined that Izzo's long-term prognosis for Lyme disease was "good," and both Drs.

Garde and Iofin concluded that Izzo's depression was mild to moderate, diagnosed as

dysthymia. Third, Drs. Bagner and Iofin concluded that her physical and mental

impairments did not preclude her from all work activity, as Izzo claimed at the hearing.

Thus, there is no "competent medical evidence" in the record to support the full extent of

pain, fatigue, and mental limitations as alleged by Izzo. Because we defer to the ALJ's

determination of Izzo's credibility and because the ALJ's exertional and non-exertional

findings are supported by the reports of Drs. Bagner and Iofin, we conclude that the

ALJ's RFC determination is supported by substantial evidence.

Also, we conclude that any inconsistencies between any prior findings and those of

the ALJ are of no legal significance.[2] That determination is based on the fact that the

Appeals Council vacated the prior decision and the ALJ did not adopt any of the prior

findings.

**E.**

Finally, Izzo argues that the Commissioner failed to sustain her burden in

demonstrating that there were jobs in the national economy that she could perform.

Specifically, Izzo contends that the ALJ's reliance on the testimony of the vocational

expert was misplaced because the hypothetical questions asked by the ALJ did not

accurately reflect the nature and extent of her physical and mental impairments. She adds

---

[2] Following Izzo's first hearing, Administrative Law Judge Dennis O'Leary concluded
that Izzo was limited to sedentary work.

that, because Dr. Iofin's report was not available at the time of the hearing, his opinion on her psychiatric limitations was not incorporated into the questions posed to the vocational expert, amounting to a reversible error. We disagree.

The ALJ's hypothetical questions to a vocational expert must reflect all of a claimant's impairments supported by the record or the vocational expert testimony cannot be considered substantial evidence. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). In this case, the ALJ asked the vocational expert whether any jobs existed in the national economy for an individual who was restricted to light work with additional non-exertional limitations of only being able to perform jobs that require simple one or two step instructions within well-set defined routines and which did not require fine manipulation. The vocational expert responded that such a person could perform the jobs of hostess, housekeeper, and laundry worker. After reviewing the entire record, including Dr. Iofin's report on claimant's mental health, the ALJ found that the description provided to the vocational expert accurately described an individual of Izzo's vocational background and mental and physical functional limitations.

Izzo complains that the hypothetical questions failed to include specific reference to her functional loss, mental limitations, and subjective complaints of pain and fatigue. As noted above, the ALJ properly considered Izzo's non-exertional limitations and her subjective complaints of pain and fatigue in making his RFC finding. Specifically, the ALJ concluded that Izzo's subjective complaints were not completely credible in light of

13

the reports of the treating and examining doctors.  In addition, the ALJ relied upon Dr. Iofin's report as well as reports from treating physicians in determining Izzo's mental limitations.

Thus, based on the evidence submitted by treating physicians, the reports provided by Drs. Bagner and Iofin, and the ALJ's finding as to Izzo's credibility, we conclude that the description provided by the ALJ of Izzo's exertional and non-exertional limitations to the vocational expert accurately reflected Izzo's limitations.  As a result, we also conclude that the testimony of the vocational expert provides substantial evidence to support the ALJ's finding that were a significant number of jobs in the national economy that Izzo could perform.

We reject Izzo's argument that the ALJ's hypothetical questions would have differed had Dr. Iofin's report been available on the day of the hearing.  Dr. Iofin's findings were consistent with and provide support for the ALJ's description of Izzo's RFC in the hypothetical questions to the vocational expert.  Moreover, if plaintiff wanted to present Dr. Iofin as a witness to rebut the description provided to the vocational expert, she could have requested another hearing, which she failed to do.  Therefore, we conclude that the unavailability of Dr. Iofin's report at the time of the hearing does not undermine the ALJ's ultimate disability determination.

## IV. Conclusion

Based on the foregoing analysis, we conclude that the Commissioner's final determination is supported by substantial evidence and, therefore, deny Izzo's request for

a remand or a reversal with an award of benefits.

_____