

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2007

# Cop v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Cop v. Comm Social Security" (2007). *2007 Decisions.* Paper 1353.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1353

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1866
_____

JOSEPH J. COP,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-05433)
District Judge:  Honorable Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2007

Before:  FISHER, JORDAN and ROTH, *Circuit Judges*.

(Filed: April 4, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This case involves a claim for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act,

(the "Act").  Joseph J. Cop appeals the District Court's determination that substantial

evidence supported the Commissioner of Social Security's ("Commissioner") decision that Cop did not qualify for DIB or SSI. For the following reasons, we will affirm the District Court's judgment.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis.[1] Cop filed an application for DIB and SSI on April 16, 2002, claiming disability since December 21, 2001. Cop claimed that he had hypertension, diabetes, depression, respiratory problems, headaches, poor eyesight, hearing difficulties, and problems with his back and neck. After his application was denied, Cop sought reconsideration, and appealed after his request for benefits was again denied. Cop's case was then heard by an administrative law judge ("ALJ").

At the hearing before the ALJ, Cop was the only witness. He testified that before becoming disabled he was a taxi driver, but he did not leave the job because of his health. Rather, he was fired because he was not sufficiently familiar with the area in which he drove the taxi. Cop also testified that he no longer drives a car because he could not afford the insurance, but even when he drove he could only drive for short periods of time as pain required him to shift positions often. Cop's poor eyesight in his left eye was not a

---

[1]The evidence included in Cop's appendix related to the Commissioner's approval of Cop's claim for benefits with an onset date of April 29, 2004, is not relevant to these proceedings and was not part of the record below. Therefore, this evidence is not considered in our analysis of this case.

2

new problem, and it did not prevent him from driving. However, he testified that he had no night vision, and that his vision had gotten progressively worse. But, he also testified that he only wore glasses for reading. Cop testified that he was able to sit for five to thirty minutes, and could walk approximately one-tenth of a mile with breaks. He also stated that he could only stand for five minutes, was unable to carry heavy items, had trouble bending, and that it was painful to get in and out of a car.

Medical evidence was also submitted to and considered by the ALJ. The medical evidence in the record is extensive, and it is not necessary for us to recite it all to adjudicate the claims before us. Prior to the alleged onset of the disability, Cop was diagnosed with, among other things, a generalized anxiety disorder due to his admission to the hospital for Legionnaires' disease, possible personality difficulties, diabetes, and hypertension. Cop also suffered from headaches and pain in his lower back and legs. After the alleged onset of the disability, Cop complained of abdominal pain but multiple CT scans produced normal results. It was also determined that Cop had lost some ability to hear in one ear, and a hearing aid was recommended.

Cop saw a psychologist at the end of June 2002. Although he told the psychologist that he was depressed, the psychologist noted that there was no current or past psychiatric treatment and that his affect was bright. Cop informed the psychologist that he engaged in community service three times a week for four hours each day. He also reported that he engaged in household chores, and searched for an apartment and a job on a daily basis. The psychologist diagnosed Cop with adjustment disorder and determined that his global

3

assessment function was sixty-five and had been seventy-five the previous year. In July 2002, a state psychologist determined that Cop's psychological issues were not severe, and that he only had minor limitations in activities of daily living.

Cop was also examined by a medical doctor in August 2002. That doctor observed that although Cop complained of difficulty in stooping or bending and walking up stairs, he only had minimal difficulties with getting on and off the examination table. Further, the doctor stated that Cop appeared to "ambulate without difficulty and without the aid of an assisted device." He also found Cop's visual acuity to be 20/20 in his right eye and 20/200 in his left eye. Cop had decreased muscle strength on his left side, was not able to walk on his heels or toes, and had some difficulty maintaining his balance.

Cop was seen by a state agency medical doctor in August 2002. That doctor determined that Cop had the functional capacity to occasionally lift and carry up to fifty pounds, frequently carry and lift up to twenty-five pounds, and stand, walk or sit-up for about six hours a day. He also noted that Cop had limited depth perception and field of vision, as well as a mild hearing loss. Finally, the doctor stated that these impairments did not meet or equal a listing.

In March 2003, Cop was diagnosed with acute sciatica, which improved with medication. In April 2003, an MRI of Cop's lumbar spine demonstrated that he had a posterior disc protrusion. A vascular surgeon examined Cop in August 2003 regarding his complaints that he had trouble walking. The surgeon diagnosed Cop with only mild coronary disease, and did not recommend bypass surgery.

4

After hearing Cop's testimony and reviewing all of the medical evidence, the ALJ denied Cop's claim finding that although Cop had "a severe impairment or combination of impairments [he] retain[ed] the residual functional capacity to return to the work he performed in the past." The ALJ determined that Cop's diabetes, hearing loss, hypertension, headaches and back problems were severe impairments, but that none of Cop's impairments were within the listings. Because Cop retained a residual functional capacity and could return to past relevant work, the ALJ found that Cop was not disabled as defined by the Act and was not eligible to receive DIB or SSI.

Cop appealed the ALJ's decision to the Appeals Council, which found no grounds for review.[2] Cop then filed suit in the District Court. The District Court affirmed the Commissioner's decision and dismissed the appeal finding that substantial evidence supported the decision. Finally, Cop brought this timely appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the ALJ's findings to determine whether they were supported by substantial evidence. *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (internal quotation marks and citation omitted).

---

[2]The Appeals Council's denial of Cop's request for review made the ALJ's decision the final decision of the Commissioner.

5

It is "less than a preponderance of the evidence but more than a mere scintilla." *Jessurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

## III.

An individual must be disabled in order to qualify for benefits under the Act and the accompanying regulations. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step test is used to determine whether an individual qualifies for DIB or SSI. *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Steps one through three require the claimant to prove (1) that he is not currently engaging in substantial gainful activity, (2) that he suffers from a severe impairment,[3] and (3) that his disability meets or equals a listed impairment. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

> If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity[4] to perform h[is] past relevant work. The claimant bears the burden of demonstrating an inability to return to [his] past relevant work.

---

[3]If the claimant fails to prove step one or two, he is ineligible for SSI or DIB. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

[4]Residual functional capacity is "what [the claimant] can still do despite his limitations." 20 C.F.R. § 416.945(a).

*Id.* (internal citations and quotations omitted). If the ALJ determines that the claimant cannot resume his prior occupation, the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other work.[5] *Id.* (internal citations omitted).

On appeal, Cop attacks the ALJ's determinations at steps two through four. As for step two, Cop claims that there was not substantial evidence to support the ALJ's determination that his psychiatric and visual impairments were not severe. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. Basic work activities include "abilities and aptitudes necessary to do most jobs." *Newell v. Comm'r of Soc. Security*, 347 F.3d 541, 546 (3d Cir. 2003) (internal quotation marks and citations omitted). We have explained that the claimant's burden is to show that the impairment has more than a minimal effect on his or her ability to work. *See id.* (internal citations omitted). Although the standard of review remains the same, courts should give close scrutiny to a determination that a claimant fails to meet his or her burden at step two. *McCrea v. Comm'r of Soc. Security*, 370 F.3d 357, 360-61 (3d Cir. 2004).

---

[5]Other work means that "[t]he ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with h[is] medical impairments, age, education, past work experience, and residual functional capacity." *Plummer*, 186 F.3d at 428. Often the ALJ seeks assistance from a vocational expert at this step. *Id.* (internal citations omitted).

Cop argues that he met this burden. However, the record demonstrates that there is substantial evidence to support the ALJ's determination. The medical evidence does not suggest that Cop had a severe mental impairment which would limit his ability to work, nor did he provide testimony of such an impact. Similarly, the record does not reflect that his vision problem limited his ability to work. The medical evidence explains that he had limited depth perception and field of vision, but there is no explanation of how this impacted his ability to work. Cop's testimony did not provide an explanation either. He testified that he was able to drive, and although his sight was getting progressively worse, the only problem he had was due to his lack of night vision. But, this problem existed before the alleged onset of the disability, including when Cop was employed as a taxi driver. Even under close scrutiny, there is substantial evidence to support the conclusion that Cop's mental and visual impairments were not severe.

Cop's next claim is that the ALJ failed to compare the listings to Cop's impairments as required at step three. Cop relies on *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-20 (3d Cir. 2000), in support of his claim that the ALJ's step three analysis is so inadequate that it cannot be given a meaningful judicial review. Cop is correct that "this Court requires the ALJ to set forth the reasons for his decision." *Id.* at 119 (internal citation omitted). However, this is not a case where the ALJ failed to identify the relevant listings, discuss the evidence or explain his reasoning. *Id.* (internal citation omitted). Rather, the ALJ identified the relevant listings in his opinion, discussed the medical evidence and Cop's testimony, and explained that the

8

evidence demonstrated that Cop's impairments do not meet or equal the listing requirements. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 84-86 (3d Cir. 2000). The fact that the ALJ included the medical evidence in his discussion of residual functional capacity (and stated that he was doing so), instead of including it twice, does not change this result. The ALJ's determination is supported by substantial evidence and therefore Cop's claim is without merit.

Cop also claims that the ALJ failed to compare the combination of his impairments to the listings. Cop is incorrect. The ALJ stated that there was no evidence in the record that Cop's "condition" met or equaled any listing requirement, and found that despite his impairments or combination thereof he retained a residual functional capacity to engage in "medium work." As discussed above, the ALJ properly analyzed whether the impairments met the listing requirements. The ALJ's decision that none of Cop's impairments equaled a listing is also supported by substantial evidence as Cop produced no medical evidence of the equivalence. A decision about whether impairments are a medical equivalent is based on "medical evidence only." 20 C.F.R. § 404.1526(c). Therefore, there was substantial evidence to support the ALJ's determination that none of Cop's impairments or the combination of his impairments equaled a listing because Cop produced no medical evidence regarding the equivalence of his impairments to a listing.

Cop next claims that the ALJ failed to provide an adequate analysis for his determination of Cop's residual functional capacity and that the determination lacks evidentiary support. At step four, the ALJ must determine the claimant's residual

9

functional capacity and whether it enabled him to perform past relevant work. In determining a claimant's residual functional capacity, the ALJ must consider all of the evidence before him. *Burnett*, 220 F.3d at 120. An ALJ "may weigh the credibility of the evidence, [but] he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Id.* (internal citations omitted). This is true for non-medical evidence as well; even if a claimant's testimony of pain or other subjective symptoms is not supported by objective medical evidence, the ALJ "must still explain why he is rejecting the testimony." *Id.* at 122 (internal citations omitted).

In this case, the record demonstrates that the ALJ considered all of the medical and non-medical evidence before him in determining Cop's residual functional capacity. There was no medical evidence that contradicted the ALJ's finding and therefore there was nothing for the ALJ to reject. Cop's testimony regarding his pain and symptoms was not supported by objective medical evidence and the ALJ did reject his testimony. However, as required, the ALJ also explained his reasons for rejecting the testimony: the extensive medical evidence in the record contradicted Cop's subjective claims and the subjective claims were not credible to the extent alleged. The ALJ's determination that Cop could engage in "medium work" was reached by a proper analysis of the entire record and is supported by substantial evidence.

Cop's final claim is that the ALJ's determination that Cop could engage in past relevant work was improper and not supported by substantial evidence. In making a determination of past relevant work, an ALJ determines the "physical and mental

10

demands of jobs a claimant has performed in the past." *Burnett*, 220 F.3d at 123 (internal quotation marks and citation omitted). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." *Id.* (internal quotation marks and citation omitted). Whether the claimant can still perform such work is determined based on the claimant's testimony about the past work requirements he or she can no longer perform, medical evidence regarding the claimant's impairments, and sometimes supplementary information including the Dictionary of Occupational Titles. *Id.* The past relevant work determination "must be based on evidence drawn from the[se] . . . three categories." *Id.* (internal citation omitted).

In this case, Cop testified that he could no longer perform his past jobs of a taxi driver or courier because he had trouble carrying things and walking long distances. He explained that a taxi driver often has to carry a customer's luggage or groceries and couriers often use special parking which is located far from the building. The ALJ consulted the Dictionary of Occupational Titles which describes the position of a taxi driver as a position requiring medium exertional levels. As the ALJ found in his discussion regarding residual functional capacity, Cop's testimony regarding his impairments is not supported by objective medical evidence. An ALJ is not required to give great weight to a claimant's subjective testimony when the testimony is not supported by medical evidence. *See Schaudeck v. Comm'r of Soc. Security*, 181 F.3d

11

429, 433 (3d Cir. 1999) (internal citations omitted). Additionally, Cop did not offer any evidence or testimony regarding whether the position of taxi driver requires more than a medium exertional level. *Cf. Burnett*, 220 F.3d at 123. Because the ALJ relied on the Dictionary of Occupational Titles and the medical evidence in the record, there is substantial evidence to support his determination that Cop can return to his relevant past work.

IV.

For the foregoing reasons, we will affirm the District Court's judgment that substantial evidence supports the ALJ's determination that Cop was not eligible for SSI or DIB during the relevant time period.