

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2007

# Kenney v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2269

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kenney v. Comm Social Security" (2007). *2007 Decisions.* Paper 1086.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1086

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2269

ANNE KENNEY,

                Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 03-cv-2952
(Honorable Dennis M. Cavanaugh)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2007

Before:  SCIRICA, *Chief Judge*, FUENTES and ALARCÓN[*], *Circuit Judges*.

(Filed:  May 18, 2007)

OPINION OF THE COURT

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

SCIRICA, *Chief Judge*.

Petitioner Anne Kenney appeals the District Court's Order affirming the Commissioner's decision to deny Supplemental Security Income benefits prior to April 1, 2000. We will affirm.

I.

Anne Kenney was born on May 14, 1946. She attended one year of college and performed a variety of jobs in the past, but she does not qualify as having any past relevant work experience under 20 C.F.R. § 416.956(a). Kenney contends she suffers from severe orthopedic, pulmonary, and psychiatric conditions. These conditions include lower back, hand, and knee pain, asthma, depression, and anxiety.

Kenney first applied for SSI benefits on February 23, 1996. Her initial application for benefits was denied. After a hearing, the ALJ denied Kenney's application, and Kenney timely appealed to the Appeals Council. On April 25, 2000, Kenney filed another application for SSI, and the state agency found she was under a disability starting April 1, 2000. The Appeals Council then vacated the ALJ's decision, consolidated both claims, and remanded the consolidated case to the ALJ for adjudication. The ALJ found Kenney under a disability as of April 1, 2000, but not before that date. After the Appeals Council denied review, the ALJ's decision became final. The District Court affirmed, finding "that the Commissioner's decision that Plaintiff was not disabled in 1996 [was] based on a complete analysis, supported by substantial evidence." *Kenney v. Comm'r of Soc. Sec.*, No. 03-2952 (D.N.J. Feb. 21, 2000). Kenney timely appealed.

2

## II.

The District Court had jurisdiction under 42 U.S.C. § 405(g) and we have appellate jurisdiction under 28 U.S.C. § 1291. We employ a substantial evidence standard to review a Commissioner's final denial of SSI benefits. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (internal quotations and citations omitted). Despite this deference, we have the "responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Id.* at 317 (quoting *Smith v. Califano* 637 F.2d 968, 970 (3d Cir. 1981)).

Evidence is not substantial if the Commissioner or the ALJ failed to consider all relevant evidence or failed to explain the resolution of conflicting evidence. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The ALJ is not "require[d] . . . to use particular language or adhere to a particular format in conducting his analysis. Rather, [there must be] . . . sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "In the absence of such an . . . [explanation], the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Additionally, evidence is not substantial if it is overwhelmed by other evidence, such as that of a treating physician, which is accorded great weight. *See Morales*, 225 F.3d at 317.

3

III.

To be eligible for disability benefits, a claimant has the burden to demonstrate that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). There is a five-step sequential evaluation process to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents her from performing her past-relevant work; and (5) whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity.[1] 20 C.F.R. § 404.1520(a)(4); *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003). The claimant bears the burden of proof with respect to the first four steps, then the burden shifts to the Commissioner at step five. *Ramirez v. Barnhart*, 372 F.3d 546, 550–51 (3d Cir. 2004).

The ALJ performed the five-step analysis and determined that Kenney had not engaged in substantial gainful activity since 1996, and she has had severe asthma and

---

[1] Under 20 C.F.R. § 404.1545(a), residual functional capacity is defined as the most work a claimant may continue to perform in spite of physical or mental impairments and related symptoms.

orthopedic conditions, which do not meet or equal a listed impairment. Kenney does not dispute these findings. But Kenney contends the ALJ erred in finding she had a residual functional capacity "to perform light work in an environment free of excessive pulmonary irritants" through March 2000, and only finding a residual functional capacity of sedentary work after April 1, 2000.

The medical experts agreed that Kenney's orthopedic problems progressively deteriorated during the period at issue, but they set forth conflicting opinions as to the date of debilitation from Grade I spondylolisthesis, evident on the 1996 X-ray, to Grade II spondylolisthesis, shown in the 2000 X-ray. Dr. Albert Mylod, Jr., a board certified orthopedic surgeon without an examining or treating relationship to Kenney, but engaged and paid by Kenney, testified that the July 2000 X-ray showed progression in Kenney's orthopedic conditions and "with the benefit of hindsight," Dr. Mylod assessed her disability date as 1996. Dr. Mylod acknowledged Kenney did not have X-rays or MRI scans completed between 1996 and 2000 to support his assessment of the onset date.

In contrast, Dr. Fetchner, an internist without an examining or treating relationship to Kenney, testified at the post-remand hearing that "[t]here's nothing in the record really that pinpoints exactly" when Kenney's residual functional capacity progressed from light to sedentary due to her orthopedic deterioration. Dr. Fetchner agreed with Dr. Mylod that Kenney's condition progressed throughout the period, and did not suddenly deteriorate in 2000, but he testified "it wouldn't necessarily go all the way back to 1996" and "I would

5

have problems doing that with the lumbar sacral spine X-ray not as severe and who knows when that started."

Kenney contends the ALJ improperly discredited Dr. Mylod's expert testimony. The ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." *Burnett*, 220 F.3d at 121. The ALJ did so here, and we find his conclusion supported by substantial evidence. The ALJ noted Dr. Mylod's opinion should be given less weight because he was a non-examining, non-treating witness, and any weight given to his testimony depended on the degree to which it was supported by objective evidence. *See* 20 C.F.R. 416.927(d) ("[T]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Dr. Mylod repeatedly acknowledged in his testimony that there were no X-rays or MRI scans for the period between 1996 and 2000 from which to make a conclusive determination of the onset of Kenney's disability. Additionally, as late as October 1999, Dr. Ronald Robinson, a treating physician at the Center for Family Health at St. Mary Hospital, assessed a mild spinal condition. The ALJ "note[d] the dearth of objective medical evidence regarding the claimant's orthopedic impairment prior to July 2000" and found Dr. Mylod's opinion not reasonable after considering the lack of objective evidence to support his conclusion. The ALJ also noted Dr. Mylod's potential bias because he was retained and paid by Kenney, but made no finding on the issue.

6

Because the ALJ considered the evidence presented, and provided a reasoned rejection of Dr. Mylod's testimony, we find the ALJ's opinion supported by substantial evidence.

Kenney also contends the ALJ impermissibly rejected the opinion of her treating physician, Dr. George Ciechanowski. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429). But here, the ALJ rejected the opinion of Dr. Ciechanowski, in part because he treated her infrequently, and also because he made his determination that Kenney exhibited daily chronic symptoms in the period after she had suffered an acute asthma attack. Additionally, the ALJ found Dr. Ciechanowski's opinion unsupported by objective medical evidence. Dr. Ciechanowski's treatment notes repeatedly describe Kenney's asthma as stable. Dr. Fetchner testified that many "patients[' asthma] become[s] controlled and whether it was originally moderate or even severe doesn't mean anything[—]it's the control." In 1996, Dr. Sam Wilchfort found Kenney had "mild restrictive disease." In 1997, Dr. Gilbert Melnick found Kenney's "lungs show good aeration with no focal disease." In 1999 and 2000, Dr. Robinson described Kenney's asthma as well-controlled. Considering the totality of the evidence, we find the ALJ's rejection of Dr. Ciechanowski's opinion supported by substantial evidence.

7

Kenney contends the ALJ erred by not appointing a medical expert that specialized in the field of the purported disability. An ALJ may appoint a medical expert when the ALJ must determine the onset of an impairment. *See Newell*, 347 F.3d at 548 (internal citations omitted). Although HALLEX I-2-5-36(D) states "[t]he ALJ or designee must select the [Medical Examiner] whose expertise is most appropriate to the claimant's diagnosed impairment(s)," we do not find the ALJ erred in appointing Dr. Fetchner in light of Kenney's contention she suffers under a disability in three separate specialities, pulmonary, psychiatric, and orthopedic. *See* Social Security Administration, Office of Hearings and Appeals, Hearings, Appeals and Litigation Law Manual, at I-2-5-36(D) (updated, Sept. 28, 2005), available at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-36.html. We note that the HALLEX section cited by Kenney in her brief, HALLEX I-2-434(A), does not exist. Additionally, the cases cited by Kenney, *Newell v. Comm'r of Social Security*, 347 F.3d 541(3d Cir. 2003), and *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001), and Social Security Ruling 83-20, do not provide for the appointment of a medical expert within a particular specialty. We find this claim lacks merit.

IV.

For the foregoing reasons, we will affirm.

8